Johnson, J.
The difference of opinion between the parties, as to the duty of the budget commissioners in the premises, will be concluded by the answer to a single question: Do the words “heretofore” and “hereafter,” which occur- in Section 5649-2, General Code, as amended April 16, 1913, and approved May 6, 1913, refer to the date of the passage of the original section on May 31, 1911, or to the date when the amendment became effective, to-wit, August 8, 1913? It is conceded that it is necessary for the defendants to levy the sum of $196,074.47 for sinking-fund and interest purposes for bonds issued by the city of Cincinnati between the dates of June 2, 1911, and August 8, 1913, without a vote of the people. The original Section *16 5649-2, which is part of the act known as the Smith one-per cent, law, was as follows:
“Sec. 5649-2. Except as otherwise provided in Section 5649-4 and Section 5649-5 of the General Code, the aggregate amount of taxes that may be levied on the taxable property in any county, township, city, village, school district or other taxing district, for the year 1911 and any year thereafter, including taxes levied under authority of Section 5649-1 of the General Code, and levies for state, county, township, municipal, school and all other purposes, shall not in any one year exceed in the aggregate the total amount of taxes that were levied upon the taxable property therein of such county, township, city, village, school district or other taxing district, for all purposes in the year 1910, provided, however, thát the maximum rate of taxes that may be levied for all purposes, upon the taxable property therein, shall not in any one year exceed ten mills on each dollar of the tax valuation of the taxable property of such county, township, city, village, school district or other taxing district for that year, and such levies in addition thereto for sinking-fund and interest purposes as may be necessary to provide for any indebtedness heretofore incurred or any indebtedness that may hereafter be incurred by a vote of the people.”
Experience demonstrated that it was not practicable to limit the political subdivisions named in that section in making up their levies for all purposes to the amount levied in the year 1910. Therefore, in 1913, the legislature passed the amendment referred to (103 O. L., 552). The amendment *17 eliminated from the section the following language: “for the year 1911 and any year thereafter, including taxes levied under authority of Section 5649-1 of the General Code, and levies for state, county, township, municipal, school and all other purposes, shall not in any one year exceed in the aggregate the total amount of taxes that were levied upon the taxable property therein of such county, township, city, village, school district or other taxing district, for all purposes in the year 1910, provided, however, that the maximum rate of taxes that may be levied for all purposes, upon the taxable property therein, * * *
It is apparent that the single intent of the legislature in passing the amendment was to eliminate the requirement that the amount of taxes levied in any year should not exceed the aggregate amount levied for all purposes in the year 1910. The amended section is in the exact words of the original section with the exception of the elimination stated. Both contain the provision that the levy shall not in any year exceed ten mills on each dollar of the tax valuation of the taxable property of the county, township, city, village, school- district or other taxing district for that year, and such levies in addition thereto for sinking-fund and interest purposes as may be necessary to provide for any indebtedness heretofore incurred or any indebtedness that may be hereafter incurred by a vote of the people. Between June 2, 1911, the date when the original act was approved, and August 8, 1913, when the amendment became effective, the city is *18 sued its bonds without a vote of the people for which it is necessary to provide sinking fund and interest. Therefore, if the word “-heretofore” refers to the date June 2, 1911, the levy, including the sum for those purposes, must come within the limit of ten mills. If that word refers to the date on which the amendment became effective, the necessary amount for interest and sinking-fund purposes may be levied in addition to the limit of ten mills. The considerations which induced the legislature to pass the amendment would seem to be manifest. The provision in the original section that the levy for all purposes in the year 1910 should not be exceeded did not meet the requirements of growth in population, territory and property from time to time after that year in the different subdivisions. In a municipality or other subdivision in which there was a material growth in these respects it might be found that a sum which was sufficient in 1910 would be wholly inadequate under the new conditions. But the identity of the language of the amendment with the original section, in all other respects, manifests the satisfaction of the legislature with the provisions of the law as originally passed with the exceptions stated. There is an explicit preservation and continuance of the limitation of ten mills. It was evidently contemplated by the legislature that the increased requirements caused by growth would be met by a corresponding increase of taxable property. Generally the rule is that an amended statute is to be given the meaning that it would have had if it had read from the beginning *19 as amended. This rule is stated in McKibben v. Lester, 9 Ohio St., 627, as follows: “Where one or more sections of a statute are amended by a new act, and the amendatory act contains the entire section or sections amended, and repeals the section or sections so amended, the section or sections as amendéd must be construed as though introduced into the place of the repealed section or sections in the original act, and, therefore, in view of the provisions of the original act, as it stands after the amendatory sections are so introduced.” This rule was stated and followed in State, ex rel., v. Cincinnati, 52 Ohio St., 419, 445. The amending act provides that the original section “be amended to read as follows.” The repeal of the original section was in compliance with Section 16 of Article II of the Constitution, which provides “no law shall be revived, or amended unless the new act contains the entire act revived, or the section or sections amended, and the section or sections so amended shall be repealed.” The obvious purpose of this provision of the constitution was to avoid the confusion caused by the distribution of different parts of the same section in different enactments; but there was no intention to change the operation of the original section as to provisions which are not changed.
In 1 Lewis’ Sutherland on Statutory Construction (2 ed.), Section 237, it is said: “The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make.any different rule as to the effect of such amendments. So far as the sec *20 tion is changed it must receive a new operation, but so far as it is not changed it would be dangerous to hold that the mere nominal reenactment should have the effect of disturbing the whole body of statutes in pari materia which had been passed since the first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness. * * * The portions of the amended sections which are merely .copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act.”
In Section 238 of his work the same author says: “Where there is an express repeal of an existing statute, and a reenactment of it at the same time, or a repeal and a reenactment of a portion of it, the reenactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where reenactment takes effect at the same time.”
In McLaughlin v. Newark, 5 7 N. J. Law, 298, where a similar question was involved, the court say: “By observing the constitutional form of amending a section of a statute the legislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated. Any other rule of construction would surely introduce unexpected results and work great inconvenience.”
*21 Of course this rule would in no case be applied where the provisions of the amendment itself preclude, or where its application would produce, unreasonable or absurd results.
In Parsons v. Wayne Circuit Judge, 37 Mich., 287, an amendment was adopted twenty-two years after the original statute was passed. The amendment provided that actions on judgments “heretofore rendered” should be barred in ten years after entry thereof. The court held that, in view of the fact that it would be absurd to confine this provision to judgments rendered before the passage of the original act, the legislature intended that the words “heretofore rendered” in the amendment should apply as of the date of the amendment.
Judge Cooley in rendering the opinion remarks: “It is further urged that, as a rule of construction, a statute amended is to be understood in the same sense exactly as if it had read from the beginning as it does as amended. This is true as a rule. * * * But such a rule of construction cannot be applied when the effect would be to defeat the manifest intent of the legislature in adopting the amendment. And such would be the effect in this case.”
Authorities as to the time of the taking effect of a statute and of an amendment thereto are of no assistance in this case. Nor is there occasion to invoke the elementary rule that where the language used by the legislature is plain and free from doubt there is no room for construction. The inquiry is not, 'What is the meaning of words employed ? nor When did the amendment take effect? but What *22 period of time do the relative words in the amendment refer to ?
The presumption is that when the legislature adopts an amendment it intends to make some change in the statute amended, and when it reenacts the original statute as amended it has then made the only change it desired to make, leaving the rest of the provisions undisturbed.
The amendment should be considered in connection with the whole statute of which it has become a part. What is the whole scheme of the law? What object was intended to be accomplished by it and what imperfections were intended to be removed by the amendment? There is no uncertainty as to these matters in connection with the statute here involved.
Municipalities incurring obligations without a vote of the people, after the passage of the original act did so with full knowledge of the duty resting on them to provide for their payment within the limit explicitly declared in the law. By no stretch of construction can it be discovered that the amendment was intended to approve of a disregard of the restriction for the period between the date of the original act and that of the amendment. The demurrer to the answer will be sustained and the peremptory writ prayed for will be allowed.

Writ allowed.

Nichols, C. J., Wanamaker, Newman and Wilkin, JJ., concur.